UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MAINE LOBSTERMEN'S<br>ASSOCIATION AND LESLIE DYER,<br><br>　　　　　Defendants. | Civil Action No. 2:57CV76<br><br>**UNOPPOSED MOTION OF THE MAINE LOBSTERMEN'S ASSOCIATION TO TERMINATE THE FINAL JUDGMENT ENTERED ON AUGUST 5, 1958** |

Pursuant to Rules 60(b)(5)-(6) of the Federal Rules of Civil Procedure and Section IX of the August 5, 1958 consented Final Judgment entered in this action (the "Final Judgment"),[1] the Maine Lobstermen's Association, Inc.[2] ("MLA") moves to terminate the Final Judgment. After soliciting comments from the public on the MLA's proposed motion to terminate, the United States has provisionally indicated that it does not intend to oppose the motion having concluded that the Final Judgment is no longer needed to protect competition, is presumed no longer to be in the public interest, and should be

---

[1] A copy of the Final Judgment is attached for the Court's reference as **Exhibit A**.

[2] MLA, Inc., which was founded in 1954, entered into the Final Judgment with the Department. In March 1990, MLA, Inc. merged and consolidated with a cooperative to form the "Maine Lobstermen's Association, Inc.," a new cooperative corporation that operates under the same by-laws and has the same voting rights and board of directors as the predecessor organization. *See* Plan of Consolidation and Merger of MLA, Inc. and Maine Lobstermen's Association, Inc., Statement of Intent to Dissolve (MLA, Inc.), and Articles of Incorporation of Maine Lobstermen's Association, Inc., attached hereto as **Exhibit B**. The other Defendant in this action, MLA, Inc.'s former President, Mr. Leslie Dyer, is now deceased. *See* Leslie B. Dyer, Jr., THE COURIER-GAZETTE and THE CAMDEN HERALD, July 28, 2003 (obituary), attached hereto as **Exhibit C**.

1

terminated pursuant to current policy of the Antitrust Division of the United States Department of Justice ("Justice Department" or "Department"). The MLA, for its part, certifies that it is in compliance with the Final Judgment and has published notification of its intent to seek termination.

A Justice Department policy adopted in 1979 called for consent decrees to sunset within ten years of entry and provided that the Department would work with parties seeking to modify or terminate decrees entered prior to 1980 that contain no sunset provision ("Legacy Decree(s)"). As part of that policy, the Department encouraged parties to bring Legacy Decrees to its attention where terminating them appeared to be in the public interest. As explained further in the Memorandum in support of the Motion, the Final Judgment, in fact, has long ago achieved its purpose and is no longer needed to achieve compliance with the U.S. antitrust laws. Moreover, the lobster fishing industry has changed fundamentally in the more than five decades since the Final Judgment was entered. During that time, federal and state environmental, economic, and fisheries management regulations have fundamentally altered the industry, and MLA's role has evolved in response to these changes. The present MLA has no involvement in the commercial harvest, sale, or distribution of lobster. Rather, the MLA is a trade organization dedicated to advocacy for a sustainable lobster resource and the fishermen and communities that depend on it.

In recognition of the significant changes in the regulatory and commercial environment surrounding the lobster industry, in 2009, the MLA Board completed a strategic plan that examined the option of reorganizing into a non-profit organization to

facilitate an expansion of its educational and scientific work.  Ultimately, the MLA Board determined there was a need for two organizations, one an industry trade association that could advocate for Maine's commercial lobstermen.  The second organization would address educational, scientific and charitable needs.  In September 2010, the Maine Lobstermen's Community Alliance was incorporated in the State of Maine as a non-profit organization to foster thriving coastal communities and preserve Maine's lobstering heritage.  The MLCA received charitable 501-C-3 status through the IRS.  The MLA continues in its role as a cooperative association advocating for Maine's commercial lobstermen.

The MLCA and the MLA are now independent organizations that share staff and office space.  Patrice McCarron serves as both the executive director of the MLA and the president of the MLCA.  Each organization has its own board of Directors.  As part of the reorganization, in January 2013, the MLA Newsletter was re-launched through the MLCA under the name *Landings*.  MLCA distributes the publication to all of Maine's commercial lobstermen and serves its content to the public through the MLCA website, www.mlcalliance.org.  The MLA newsletter now runs within the pages of *Landings*.  See Exhibit D for a description of the respective roles played by the MLCA and the MLA.

MLA's goal has also been to reorganize its corporate form to dissolve the current cooperative organization and to replace it with a non-profit trade association eligible for 501-C-6 status through the IRS.  MLA is unable to complete this final phase of its strategic reorganization until the Final Judgment terminates.

The Final Judgment now needlessly prevents the MLA from completing its planned reorganization into a tax-exempt entity that will continue involvement and advocacy in many fishery management activities that affect the health of the lobster resource, the safety and efficiency of harvesting practices, and the imposition of measures to protect endangered marine species.

After notifying the Justice Department of its desire to move to terminate the Final Judgment, at the Department's request, in May 2011, the MLA published a "Notice of Intention to Terminate Maine Lobstermen's Association Final Judgment" in both the MLA newsletter, which is widely read in the Maine lobster fishing community, and the Portland Press Herald newspaper. Given the passage of time since the 2011 notices, the MLA re-published the same notices on February 3, 2014 in the Portland Press Herald/Maine Sunday Telegram and in the February 2014 edition of *Landings*. Copies of the notices are attached hereto as **Exhibit E**. The notice described the Final Judgment and the allegations it settled and invited interested persons to submit comments or relevant information to the Justice Department's Antitrust Division. To the best of the MLA's knowledge, no written comments were submitted in response. In addition, on March 19, 2012, MLA issued a press release, attached hereto as **Exhibit F**, concerning its request to terminate the Final Judgment. The press release made reference to the 2011 notice inviting public comment. Since that time, the MLA understands that no written comments have been filed.

For these and other reasons described in the accompanying Memorandum, the MLA respectfully requests that the Final Judgment be terminated.

Respectfully submitted,


/s/ Matthew J. Piehl_____
Matthew J. Piehl
mpiehl@crowell.com
Crowell & Moring, LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 624-2500 telephone
(202) 628-5226 facsimile

Mary Anne Mason
mamason@crowell.com
Crowell & Moring, LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 624-2500 telephone
(202) 628-5226 facsimile

*Of Counsel to the Maine Lobstermen's Association, Inc.*

James W. Brannan
jwb@brannanlaw.net
15 Limerock Street
P.O. Box 1021
Rockland, ME 04841
(207) 596-0554 telephone

*Attorneys for the Maine Lobstermen's Association, Inc.*

# MEMORANDUM OF LAW

Termination of the Final Judgment entered in this action is in the public interest. The Final Judgment was entered to enjoin MLA's predecessor organization of lobster harvesters, which was alleged to have engaged in unlawful coordination of the lobster fishing effort in violation of the Sherman Act, 15 U.S.C. §1.

After the passage of more than 55 years, the Final Judgment has long ago achieved its intended purpose, is no longer needed to fulfill the objective of the Final Judgment, is presumed no longer to be in the public interest, and now imposes unnecessary restrictions on the MLA. With the passage of time, the industry has changed, comprehensive federal and state lobster resource management regimes have been implemented, the relationship between lobster fishing activities and other marine activities has evolved, and federal law now requires active management of lobster harvesting activities in order to sustain the resource and protect endangered marine species from adverse impact.

The role of the MLA has also changed. The MLA now serves purely as a trade organization, and its sister organization, the MLCA carries out educational, charitable, scientific research, and community-based economic development activities. Current antitrust laws adequately enable the Department to prevent the anticompetitive agreements addressed by the Final Judgment without needlessly restricting the MLA's ability to reorganize its corporate form in order to obtain tax-favored status and better serve its membership and fulfill its mission.

## I. BACKGROUND

On October 15, 1957, the United States filed a complaint alleging that MLA, Inc. and its then-President, Leslie Dyer, combined and conspired with each other and with others, to fix and establish a minimum selling price for live Maine lobsters sold to lobster dealers, to refrain from catching lobsters until such minimum price was obtained, and to induce and compel all Maine lobstermen to adhere to the terms of the conspiracy charged, all in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. On August 5, 1958, after an indictment was returned but before a trial on the merits, the United States District Court for the District of Maine entered a consented Final Judgment, which permanently enjoined MLA, Inc., its successors, or any of its members from entering into or adhering to any agreement or understanding to fix or maintain the price for sale of live Maine lobsters, or to reduce, curtail, or limit the catch of live Maine lobsters. The MLA has complied with the terms of the Final Judgment in the ensuing years.

The modern MLA is not involved in any commercial activities involving exploitation of live Maine lobster. The MLA does not harvest, collect, purchase, sell, store, trade, or otherwise take ownership of live Maine lobsters, lobster traps, lobster vessels, or facilities for the storage, processing, or distribution of lobsters. The MLA does not hold a lobster fishing license or a lobster trap tag, nor does it have the right to hold a lobster fishing license, to own lobster trap tags, or to issue or distribute such licenses or tags. In sum, MLA has no direct involvement in commercial live Maine

lobster harvesting or sale activities.[3]  The MLA therefore has no involvement in the prices charged for lobster or the amount of lobster landed.

Today, the MLA engages in advocacy for a sustainable lobster resource, and works to support the fishermen and communities that depend on Maine's unique lobster resource.  Its work includes advocacy before federal and state agencies to address such issues as level of effort devoted to lobster harvesting, environmental and safety regulations applied to the industry and participation in a variety of legislative efforts to address issues of concern to the lobster harvesting community.  Such activities fulfill the MLA's purpose as a trade organization devoted to sustaining the Maine lobster industry and are undertaken consistently with state and federal regulatory regimes designed to protect, develop, manage, and enhance marine resources.  *See* Maine Lobstermen's Association, Inc. Strategic Plan, adopted May 3, 2011, attached as **Exhibit G**; *see generally* http://mainelobstermen.org/about-mla/.

## II. APPLICABLE LEGAL STANDARDS FOR TERMINATING THE FINAL JUDGMENT

### A. Legal Standards for Terminating Final Judgment

This Court has jurisdiction to terminate the Final Judgment.  Section IX of the Final Judgment states:

> Jurisdiction of this Court is retained for the purpose of enabling any of the parties to this Final Judgment to apply to the Court at any time for such further orders and directions as may be necessary or appropriate . . . for modification of any of the provisions thereof.

---

[3] MLA has approximately 1,000 lobster harvester members who represent approximately 17% of Maine's commercial lobster harvester license holders.

Rules 60(b)(5)-(6) of the Federal Rules of Civil Procedure also provide that, "[o]n motion and just terms, the court may relieve a party . . . from a final judgment, [or] order . . . [when] applying it prospectively is no longer equitable; or . . . [for] any other reason that justifies relief."  Moreover, the Supreme Court has recognized that "the power of a court of equity to modify an injunction in adaptation to changed conditions" is "inherent in the jurisdiction of the chancery."  *United States v. Swift & Co.,* 286 U.S. 106, 114 (1932); *see also United States v. IBM Corp.,* 163 F.3d 737, 738 (2d Cir. 1998) (affirming grant of motion by United States and defendant to terminate "longstanding antitrust decree"); *Williams v. Atkins,* 786 F.2d 457, 459 (1st Cir. 1986) ("[i]t is uncontested that the district court had the power to modify or vacate the consent decree").

Where the United States supports a defendant's request for termination of an antitrust decree, the issue before the court is whether or not such termination is in the "public interest."  *IBM Corp.,* 163 F.3d at 738, 740; *United States v. American Cyanamid Co.,* 719 F.2d 558, 565 (2d Cir. 1983); *United States v. Baroid Corp.,* 130 F. Supp. 2d 101, 103 (D.D.C. 2001); *United States v. Loew's Inc.,* 783 F. Supp. 211, 213 (S.D.N.Y. 1992).  *See also Alexis Lichine & Cie. v Sacha A. Lichine Estate Selections, Ltd.,* 45 F.3d 582, 586 (1st Cir. 1995) (public interest may be considered in modification of public consent decrees); *In re Pearson,* 990 F.2d 653, 658 (1st Cir. 1993) ("the district court is not . . . bound forever to enforce and interpret a preexisting decree without occasionally pausing to question whether changing circumstances have rendered the decree unnecessary, outmoded, or even harmful to the public interest").

Exercising "judicial supervision," *IBM,* 163 F.3d at 740, the court should, in such a case, approve the decree termination if the United States provides a reasonable explanation of why the termination is consistent with the public interest. *See Loew's,* 783 F. Supp. at 214; *see also United States v. Western Elec. Co.,* 900 F.2d 283, 307 (D.C. Cir. 1990) (public interest test applies to a termination of decree restrictions with assent of all parties to the decree; district court should approve an uncontested termination "so long as the resulting array of rights and obligations is within the *zone of settlements* consonant with the public interest *today*") (emphasis in original); *Western Elec. Co.,* 993 F.2d at 1576-77 (under "deferential" public interest test, court should accept a consensual termination of decree restrictions that the Department of Justice "reasonably regarded as advancing the public interest[;]" it is "not up to the court to reject an agreed-on change simply because the proposal diverge[s] from *its* view of the public interest;" rather, courts "may reject an uncontested modification only if it has exceptional confidence that adverse antitrust consequences will result") (emphasis in original).

The "public interest" standard takes its meaning from the purposes of the antitrust laws. *Am. Cyanamid,* 719 F.2d at 565. As the Supreme Court has emphasized, "[t]he purpose of the [Sherman] Act is not to protect businesses from the working of the market; it is to protect the public from the failure of the market." *Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 458 (1993).

The purpose of an antitrust decree is to remedy and prevent the recurrence of the violation alleged in the complaint. Where the government has consented to termination and explains why there is "no current need for" the constraints imposed by a decree,

termination will serve "the public interest in free and unfettered competition as the rule of trade." *Loew's,* 783 F. Supp. at 213, 214. Deference is given to the position of the Justice Department in light of its antitrust expertise. *Baroid Corp.,* 130 F. Supp. 2d at 103.

Beyond being unnecessary, obsolete decrees can be harmful. They may themselves have anticompetitive effects, burdening the parties, the courts, and the competitive process. Thus, for example, the Second Circuit affirmed termination of the *IBM* decree under the public interest standard because there was no longer any material threat of antitrust violations absent the decree restrictions and because the decree "resulted in artificial restraints . . . which do not further the cause of healthy competition." *IBM,* 163 F.3d at 740 (internal citations omitted). Of course, termination of an antitrust decree does not leave the decree's parties unregulated. They remain "fully subject to the antitrust laws of general application." *Loew's,* 783 F. Supp. at 214.

B. **Justice Department Policy**

The Justice Department itself has recognized that obsolete decrees generally can impose significant, needless burdens on the competitive process, companies, and the courts. That consideration, among others, led the Department starting in 1979 to establish a policy of including in every consent decree a so-called "sunset provision" that, except in exceptional cases, automatically terminates a decree after ten years. *See* Press Release, U.S. Department of Justice, Antitrust Division, Antitrust Division Announces New Streamlined Procedure for Parties Seeking to Modify or Terminate Old Settlements and Litigated Judgments (March 28, 2014), attached hereto as **Exhibit H** ("Pre-1980

perpetual decrees cannot be terminated or modified except by court order. . . . Going forward, the [DOJ] will advise courts that pre-1980 'legacy' decrees, except in limited circumstances, are presumptively no longer in the public interest."). *See also* ANTITRUST DIVISION, U.S. DEP'T OF JUSTICE, DIVISION MANUAL III-146 (5th ed. 2014), excerpt attached hereto as **Exhibit I** ("The 1979 change in policy was based on a judgment that perpetual decrees were not in the public interest. . . . [T]here is no such presumption that legacy decrees remain in the public interest. The Division has said in briefs supporting the termination of legacy decrees that such decrees should presumptively be terminated except in limited circumstances . . . ."). As a result, it is MLA's understanding that the non-exceptional antitrust decrees to which the United States is a party that remain in effect are those entered either within the past ten years or those Legacy Decrees entered before 1980 – the year after the "sunset" policy was adopted.

The Department has established a protocol to aid parties to Legacy Decrees in seeking the Department's consent to the decrees' termination. *See* Exhibit H; *see also* Exhibit I at III-147 ("[T]he parties would certify that they are in compliance with the decree and have disclosed all known violations; they will notify other defendants bound by the decree; and will publish notification of their intent to seek termination or modification."). As discussed herein, the MLA complied with that protocol and the Justice Department has concluded that termination is in the public interest and, in keeping with its updated policy, may advise the Court that the decree is presumptively no longer in the public interest.

## III. ARGUMENT

### A. The Final Judgment Is Unnecessary and Should Be Terminated

The Court should terminate the Final Judgment for several reasons. The Final Judgment is no longer needed to achieve its purpose. The MLA is not involved in the commercial harvest, sale, or distribution of live Maine lobster. The individuals formerly involved with MLA, Inc. whose conduct was the subject of the United States' 1957 complaint, including Mr. Dyer, are now either deceased or no longer involved with the MLA. Moreover, the MLA certifies that it (a) is not aware of any prior violations of the Final Judgment and (b) is in compliance with the terms thereof. *See* Statement of David Cousens, President, Maine Lobstermen's Association Board of Directors, June 16, 2014 (**Exhibit J**).

Terminating the Final Judgment will serve the public interest by eliminating the impediments imposed by the Final Judgment on routine and pro-competitive activities. For example, the Final Judgment's broad prohibition against entering into a "contract, combination, agreement, understanding, plan or program . . . to maintain or stabilize the price . . . or other terms or conditions for the sale of live Maine lobsters . . . . [t]o urge, influence or suggest, or attempt to urge, influence or suggest, the price . . . or other terms or conditions for the sale of live Maine lobsters," or "[t]o reduce, curtail or limit the catch or supply of live Maine lobsters," restrict the MLA's ability to undertake the following illustrative types of activities unless it remains organized as a cooperative membership association:

- Discussion of and advocacy related to environmental and resource management measures under consideration by regulators, including trap limits, area limits, seasonal limits, and/or overall catch limits or "quotas." Such measures are aimed at achievement of a variety of public policy goals including sustainability of the resource, protection of endangered species, safety, economic efficiency, and state or local economic development objectives.

- Programs designed to educate lobster industry participants on gear technology or harvesting practices that reduce cost, improve productivity, and enhance a harvester's ability to improve margins and profitability. Such programs would be aimed at public policy goals related to economic sustainability of the Maine lobster fishery and could include examination of various economic aspects of lobster harvesting.

- Participation in local and state efforts to develop programs to foster commercial innovation in the context of a traditional fishing culture. Such efforts might involve exploration of marketing and branding programs to provide access to new distribution channels and consumer segments and sponsorship of product quality certification programs. It might also include an examination of alternate commercial arrangements to reduce price volatility associated with seasonality and limits on existing distribution channels. For example, the MLA would be in a position to research, study, and educate lobstermen about legally-available collective purchasing (such as jointly purchasing bait) and marketing arrangements and/or long-term supply arrangements with dealers that could reduce transaction costs for the lobstermen. The aim of such programs would be to increase transparency in the Maine lobster industry and, ultimately, expand markets for live Maine lobster.

Moreover, the U.S. antitrust laws adequately address the agreements alleged in the 1957 lawsuit that led to entry of the Final Judgment and suffice to prevent their recurrence. Following Congress' 1974 amendment of the Sherman Act to make violations of the Act a felony, punishable by substantial fines and jail sentences, the Justice Department concluded that it no longer needed to maintain indefinitely old consent decrees that allowed substantial penalties for antitrust violations through criminal contempt proceedings. *See United States v. Columbia Artists Mgmt., Inc.,* 662 F. Supp.

865, 867 (S.D.N.Y. 1987). The Final Judgment is thus no longer needed to provide legal grounds to identify or challenge prospective, anti-competitive agreements.

  B. **Notice to the Public Published in March 2011 and February 2014 Is Sufficient.**

This Court should terminate the Final Judgment without requiring further public notice. Pursuant to the Justice Department's request, in March 2011, MLA provided notice to the public of its intent to seek termination of the Final Judgment. *See* Exhibit H at 2 (Antitrust Division protocol directing party requesting termination "to publish, at its own expense, notice of its intent to seek termination or modification and invite interested parties to provide the [Department's Antitrust] Division with relevant information"). The notice described the allegations of the suit settled by the Final Judgment and key provisions of the Final Judgment and directed readers to submit comments or information to the Department's Antitrust Division. The notice appeared in the May 2011 issue of the MLA newsletter and in the May 11, 2011 issue of the Portland Press Herald. *See* Exhibit E. It is MLA's understanding that no comments were submitted in response. Further, on March 19, 2012, the MLA issued a press release concerning its request to terminate the Final Judgment. *See* Exhibit F. The press release made reference to the 2011 notice inviting public comment. Finally, given the passage of time since the 2011 notices, the MLA re-published the same notices on February 3, 2014 in the Portland Press Herald/Maine Sunday Telegram and in the February 2014 edition of *Landings*. *See* Exhibit E. Since these multiple public notices have been filed, MLA understands that no written comments have been received by the Department of Justice. The MLA believes

that its May 2011 notices, as supplemented and reinforced by its March 2012 press release, as further reinforced by its February 2014 notices, are sufficient to solicit public comment on termination of the Final Judgment and that no further benefit would be gained by additional notice.

## CONCLUSION

For the foregoing reasons, the MLA respectfully requests that this Court enter an Order terminating the 1958 Final Judgment entered in this action.

Respectfully submitted,

/s/ Matthew J. Piehl_____
Matthew J. Piehl
mpiehl@crowell.com
Crowell & Moring, LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 624-2500 telephone
(202) 628-5226 facsimile

Mary Anne Mason
mamason@crowell.com
Crowell & Moring, LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 624-2500 telephone
(202) 628-5226 facsimile

*Of Counsel to the Maine Lobstermen's Association, Inc.*

James W. Brannan
jwb@brannanlaw.net
15 Limerock Street
P.O. Box 1021
Rockland, ME 04841
(207) 596-0554 telephone

*Attorneys for the Maine Lobstermen's
Association, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

I hereby certify that on June 25, 2014, I electronically filed the foregoing Memorandum of the Maine Lobstermen's Association accompanying the Motion of the Maine Lobstermen's Association to Terminate the Final Judgment with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

> James W. Brannan
> jwb@brannanlaw.net
> 15 Limerock Street
> P.O. Box 1021
> Rockland ME 04841
>
> Michele B. Cano
> Michele.cano@usdoj.gov
> United States Department of Justice
> Antitrust Division
> Transportation, Energy, and Agriculture Section
> 450 Fifth Street, NW
> Suite 8000
> Washington, DC  20530

/s/ Mary Anne Mason_____
Mary Anne Mason
Crowell & Moring, LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004
Telephone: (202) 624-2500
Of Counsel to the Maine Lobstermen's Association, Inc.
mamason@crowell.com

/s/ Matthew J. Piehl_____
Matthew J. Piehl
Crowell & Moring, LLP

1001 Pennsylvania Avenue, NW
Washington, DC  20004
Telephone: (202) 624-2500
Of Counsel to the Maine Lobstermen's Association, Inc.

mpiehl@crowell.com